United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re: | Case No. 17 BK 03663 |
| ASHINA NEFERTARI HICKS, | Chapter 13 |
| Debtor. | Judge: Hon. Jack B. Schmetterer |

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO SHOW CAUSE FOR CREDITOR'S ASSERTED VIOLATION OF AUTOMATIC STAY [DKT. NO. 108]

Debtor Ashina Nefertari Hicks ("Debtor" or "Hicks") has moved to show cause for Creditor City of Chicago's ("the City") alleged violation of the automatic stay. Debtor has requested $6,000.00 in damages to be offset against what she currently owes to the City.

For the reasons discussed below, Debtor's Motion will be denied by separate order.

### UNDISPUTED FACTS

1. Debtor filed her voluntary petition for Chapter 13 relief on February 8, 2017. (Dkt. No. 1.)
2. The City is a creditor of the Debtor's with a claim against the estate of $15,890.00, based upon more than 50 citations for parking, standing, compliance and automated traffic violations, including tickets for red-light violations and speeding. (Dkt. No. 113.)
3. On October 2, 2017, the City booted the Debtor's vehicle at a Chicago Public School location. (Dkt. No. 113.)
4. The City voluntarily released the Debtor's vehicle the next day, October 3, 2017, before the car was impounded. (Dkt. No. 113.)
5. Debtor filed the instant Motion to Show Cause on October 12, 2017. She asserts that due to some sort of computer error on the City's part, her bankruptcy was not recognized and as a result, the City willfully violated the automatic stay by booting her car. She asserts that she is entitled to a $6,000.00 offset against the City's claim due to the mental anguish, embarrassment, and inconvenience she suffered as a result, pursuant to 11 U.S.C. § 362(k)(1). (Dkt. No. 108.)
6. The City filed its Response on November 1, 2017. The City asserts that in addition to the more than 50 prepetition citations incurred by the Debtor, including several red-light violations, speeding violations, and parking tickets, she also incurred nine more citations after filing for bankruptcy, including four parking tickets and an additional red-light violation. The City argues that, pursuant to 11 U.S.C. § 362(b)(4), the automatic stay

1

does not apply to a governmental unit's actions to enforce its police powers in order to protect the public welfare and keep citizens safe. Thus, it argues, the Bankruptcy Code allows for the City to exercise control and even take possession of estate property if the City's purpose passes one of two tests. (Dkt. No. 113.)

7. The City argues that it passes the pecuniary purpose test because even though it is attempting to collect on the debt resulting from the citations to the Debtor, the primary purpose of the ordinances giving rise to the citations is to protect the health and safety of the citizens of Chicago from dangerous drivers. *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986). Even when the sanction is entirely pecuniary, the City argues, the Seventh Circuit has held that if there is a deterrence mechanism built in, the action still lies under § 362(b)(4), citing *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993). The City explains at length its three tier system of traffic violation deterrence, asserting that it serves an important deterrence purpose by preventing repeat offenders from endangering people on the roads, and concludes that the City's actions further a valid police power. (Dkt. No. 113.)

8. Alternatively, the City argues it meets the standards of the public policy test, citing *Eddlement v. U.S. Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991). The City asserts that because it seeks to effectuate public policy first and foremost with its deterrence system, the adjudication of private rights, namely getting paid on the issued citations, does not significantly outweigh the public benefit of enforcement. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 390 (6th Cir. 2001). (Dkt. No. 113.)

9. Debtor filed her Reply on November 13, 2017. She argues that the majority of citations that the City alleges she owes were insufficiently served upon her, though she does not provide any documentation of this, or request an evidentiary hearing. Rather, Debtor states that in a January 2015 administrative proceeding, an Administrative Judge "agreed that the City had engaged in insufficient service of process," though no such order is attached to her Reply. Debtor reiterates her position that an error in the City's computer system, which did not show that she was in bankruptcy, resulted in the booting of her car. Debtor further argues that 11 U.S.C. § 362(b)(4), the police power exception to the automatic stay, only applies in Chapter 11 cases and not in cases under Chapter 13, and

then only to individuals "involved in criminal activity or bad faith dealing." (Dkt. No. 114.)

10. On November 22, 2017, the City filed a Motion for Leave to File a Sur-Reply. The City states that the Debtor's Reply "muddied the waters" with respect to what the legal issues in this case are, and sought leave to clarify its position on issues that Debtor raised only in her Reply.

11. On November 29, 2017, this Court entered an order granting leave for the City to file its Sur-Reply and allowing Debtor to file any further Sur-Reply by December 10, 2017. (Dkt. No. 121.)

12. On November 29, 2017, the City filed its Sur-Reply. The City asserts therein that Debtor's argument that the City did not have proper cause to boot her car is irrelevant because the bankruptcy court does not have the power to examine the legitimacy of the City's government actions, citing *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991). Furthermore, the City asserts that pursuant to 11 U.S.C. § 362(b)(4), the only issue is the purpose of the immobilization of Debtor's vehicle, which was to promote health, safety, and welfare. Thus, the City argues, the fact that the proximate cause of the immobilization, namely the many unpaid violations owed to the City, is irrelevant, because the test under 11 U.S.C. § 362(b)(4) only asks about the governmental unit's purpose. Finally, the City argues that the Debtor is incorrect in her position that § 362(b)(4) does not apply to Chapter 13 cases and that the provision applies to situations not involving criminal activity or bad faith dealings. (Dkt. No. 119.)

13. On November 30, 2017, Debtor filed a document titled "Plaintiff's Opposition to Defendants' Motion for Leave to File a Reply and a Surreply," though no adversary complaint has been filed in this case. Debtor asserts that the City has not raised any new facts or additional arguments in the Sur-Reply, and thus, should not be considered. Debtor also reiterates her argument that the scope of 11 U.S.C. § 362(b)(4) is narrow, and that it only applies in cases of criminal activity or bad faith dealing, and that the aforementioned provision does stay police or regulatory action by the City. (Dkt. No. 123.)

3

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A).

## DISCUSSION

Debtor and the City discuss a number of issues in their pleadings, Debtor's Objection to the City's Sur-Reply, the application of 11 U.S.C. § 362(b)(4) to the City's actions, and whether the purpose of the City's actions fall within the scope of the aforementioned stay exception. 11 U.S.C. § 362(b)(4). Each of these issues will be discussed below.

### I. The City's Sur-Reply will be Considered

Debtor's opposition to the consideration of the City's Sur-Reply is primarily based on the argument that the Debtor's Reply did not raise any new issues and that the scope of her Reply did not expand the scope of issues presented such that the City's Sur-Reply is necessary. *Crummey v. Social Security Admin.*, 794 F.Supp. 2d 46, 62 (D.D.C. 2011). The Debtor cites cases from the District of Columbia, suggesting that the standard described in *Crummey* requires this Court to find that the City's Sur-Reply is unwarranted. However, the Seventh Circuit Court of Appeals has articulated that the decision as to whether to grant or deny a motion for leave to file a sur-reply is squarely within the discretion of the court. *Johnny Blastoff, Inc. v. L.A. Rams*, 188 F.3d 427, 439 (7th Cir. 1999*); Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 384, n. 4 (7th Cir. 2003); *see also Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014). Courts often deny such motions when there has been an opportunity to brief the issues thoroughly. *Univ Healthsystem Consortium*, 68 F.Supp. at 922. Likewise, when each party has had the opportunity to respond to the arguments in each brief sequentially, a motion to for leave to file sur-reply may be denied. *Id.* However, when the filing of a sur-reply "vouchsafes the aggrieved party's right to be heard" or "provides the court with the information necessary to make an informed decision," then granting a motion for leave to file a sur-reply may be appropriate. *In re Sulfiric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005).

In its Motion for Leave to File Sur-Reply, the City states that the additional brief is necessary to clarify legal issues that Debtor had confused in her Reply. Debtor's assertion that the City's Sur-Reply may only be considered if her own Reply raised new issues of law or expanded the scope of issues presented is clearly not the case given that precedent in this Circuit gives broad discretion to courts as to whether or not they will accept additional briefs such as sur-replies. The information contained within the City's Sur-Reply also provides information necessary to make an informed decision, specifically the important distinction between purpose and proximate cause with regards to the applicable tests under 11 U.S.C. § 362(b)(4). Accordingly, the Court exercises its discretion in favor of considering the City's Sur-Reply.

## II. The Purpose of the City's Immobilization of Debtor's Car Falls within the Scope of 11 U.S.C. § 362(b)(4)

Debtor alleges that the City's actions in immobilizing her vehicle by placing a boot on it after she had filed for bankruptcy, and after the City had properly received notice of her bankruptcy, violates the automatic stay provision of 11 U.S.C. § 362(a). The City contends that their action did not violate the stay because, pursuant to 11 U.S.C. § 362(b)(4), governmental units, such as the City of Chicago, are able to exercise their police and regulatory power as an exception to the automatic stay. In relevant part, 11 U.S.C. 362(b)(4) states that:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
> 4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power

11 U.S.C. § 362(b)(4). This exception has been construed narrowly to apply only to the enforcement of state laws affecting health, welfare, morals, and safety. *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 555 (7th Cir.1985).

Debtor's contention that the aforementioned provision does not apply in Chapter 13 cases is clearly incorrect. As the City indicates, § 362(b)(4), which is in Chapter 3 of the Bankruptcy Code applies, "in a case under Chapter 7, 11, 12 or 13 of this title." 11 U.S.C. § 103. Moreover, the Debtor's contention that §362(b)(4) only applies in situations where an individual is involved

5

in criminal activities or bad faith dealing is contrary to precedent in this Circuit as well. In *N.L.R.B. v. P\*I\*E Nationwide, Inc.*, the Seventh Circuit Court of Appeals held that § 362(b)(4) plainly applies in cases where a governmental unit seeks to enforce a police or regulatory power. 923 F.2d 506, 512 (7th Cir. 1991); *see also Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 938 (7th Cir. 2007). The Court of Appeals makes no mention of a supplemental requirement that the governmental act be related to a criminal matter or bad faith dealing.

The City is also correct in its argument that a bankruptcy court may not consider the underlying legitimacy of a governmental unit's actions when considering whether such an action is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). The Supreme Court has rejected a reading of § 362(b)(4) that requires a bankruptcy court to "scrutinize the validity of every administrative or enforcement action brought against a bankruptcy entity," because such a reading is "inconsistent with the limited authority Congress has vested in bankruptcy courts." *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991). A governmental unit, "is not required to demonstrate that the proposed exercise of the police or regulatory power is legitimate." *In re Herrera*, 194 B.R. 178, 185 (Bankr. N.D. Ill. 1996). The City's argument that § 362(b)(4) only allows a bankruptcy court to consider the *purpose* of a governmental unit's action, rather than the *cause* for that action to be taken is correct. Thus, Debtor's assertions that the underlying tickets (which caused the City to immobilize her vehicle) were somehow false or improperly served upon her (for which she has provided no documentation) is irrelevant. Only the purpose of the City's actions with regards to immobilization of vehicles generally is relevant to the analysis of § 362(b)(4), not the underlying cause of the immobilization of Debtor's vehicle.

To determine whether a governmental action falls within the safe harbor of § 362(b)(4), courts have employed two similar, but overlapping tests which inquire as to the true purpose of the government action: the "pecuniary purpose" test and the "public policy" test. *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014). The tests have been defined as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that

effectuate public policy. Those proceedings that effectuate public policy are excepted from the stay.

*Solis v. Caro*, No. 11 C 6884, 2012 WL 1230824, at *3 (N.D. Ill. Apr. 12, 2012) (citing *Chao v. BDK Indus., L.L.C.*, 296 B.R. 165, 167-68 (C.D. Ill. 2003)). "These inquiries contemplate that the bankruptcy court, after assessing the totality of the circumstances, determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties." *In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004). Thus, it is necessary to consider the City's purpose for immobilizing vehicles holistically under both tests.

### III. The City's Purpose for Immobilizing Vehicles Satisfies the Pecuniary Purpose Test with Regards to this Particular Debtor

The pecuniary purpose test asks whether the, "government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *In re Nortel Networks*, Inc., 669 F.3d 128, 139–40 (3d Cir. 2011). The Seventh Circuit Court of Appeals has held that even an entirely pecuniary sanction does not mean that the action falls outside of the § 362(b)(4) safe harbor. *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993). Thus, "an action does not fall outside of section 362(b)(4) simply because it will result in an economic advantage," to the government, "at the expense of the debtor's creditors." *In re Emerald Casino, Inc.*, 2003 WL 23147946, *9 (Bankr. N.D. Ill. Dec. 24, 2003).

In the instant case, the City has asserted that its laws regarding the immobilization of vehicles, while they have an ancillary pecuniary benefit, are primarily for the health, welfare, and safety of the citizens of Chicago. Several courts have agreed, writing that the City, "has a strong interest in enforcing traffic ordinances for the safety and convenience of the public." *Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984); *Wal-Mart v. City of Chicago*, 1992 WL 88457, *3 (N.D. Ill. Apr. 27, 1992). Registration requirements likewise protect the public by identifying motor vehicles and their lawful users, and differentiating those motorists from criminals who steal vehicles or intend to use them to commit crimes. 60 C.J.S. Motor Vehicles § 75. Additionally courts have found that enforcement of parking violations serves a regulatory function, in that it allows the City to control the flow of traffic on its streets. *In re Gallagher*, 71 B.R. 138, 139 (Bankr. N.D. Ill. 1987); *see also Pempek v. Edgar*, 603 F. Supp. 495, 500 (N.D. Ill. 1984) ("Parking laws protect the smooth flow of traffic and allow a city to make maximum

use of limited parking spaces."). The City also discusses at length the purpose and construction of its escalating, three-tiered deterrence system for violators of traffic and parking ordinances, which includes issuance of fines, immobilizing the vehicle by placing a boot on it, and finally, impounding the vehicle in cases where individuals repeatedly accrue parking tickets, red-light violations and speeding tickets.

The City has in this case, given the Debtor's extraordinary record of offenses, made a prima facie case that its immobilization of her vehicle satisfies the pecuniary interest test. In the case of this particular Debtor, the City has also demonstrated that she is precisely the type of driver that its ordinances are meant to keep off the road. Exhibit A to City's Response details a long history of red-light violations, speeding tickets and parking citations, both pre- and post-petition, by the Debtor. The City states that she has upwards of 50 pending citations, including six speeding in safety zone violations and nine red-light violations, at least one of which accrued post-petition. Debtor's extensive record of traffic violations presents the picture of a reckless driver. Debtor's only argument in response is that these tickets are all somehow made invalid by an alleged defect in service for which did not offer to supply proof, and an administrative order which she did not attach. The evidence provided by the City seems to suggest, with regards to the Debtor in the instant case, that they are in fact immobilizing her vehicle for the purposes of the health and safety of the citizens of Chicago, rather than simply for their own pecuniary benefit, though such benefit is always an incidental consideration in cases where debtors owe several thousands of dollars to the City for traffic violations. Thus, with regards to this particular Debtor, the City has satisfied the pecuniary interest test.

**IV. The City's Purpose for Immobilizing Vehicles Satisfies the Public Policy Test with Regards to this Particular Debtor**

The public policy test asks, "whether the government is effectuating public policy rather than adjudicating private rights." *Nortel*, 669 F.3d at 140. Thus, if the government is effectuating public policy, in order to promote public safety and the welfare of its citizens, rather than serving its own pecuniary interest or adjudicating private rights, the exception is applicable. *Id.* Here again, courts are asked to consider the totality of the circumstances with regards to the actions of the governmental unit in question. *Chao*, 270 F.3d at 389 (stating that the tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors").

As discussed above, the City has made a prima facie case that its policies with regards to immobilizing vehicles of reckless individuals is an important public policy goal that promotes the safety and welfare of its citizens by keeping reckless drivers off of the streets, rather than an attempt to adjudicate private rights between itself and debtors in bankruptcy. With regards to this particular Debtor, the City has shown that it satisfies the public policy test for largely the same reason. Debtor has a long history of violating traffic laws, including red-light and speeding violations involving public safety and has continued to accrue post-petition tickets, including a post-petition red-light violation, which suggests that she is exactly the type of reckless driver that the City's ordinances are designed to stop from driving on its streets. Again, Debtor only contests these tickets on the basis that there was a defect in service by the City, though she has made no showing that this is the case. Furthermore, Debtor has not attached any administrative order that tends to show these tickets are invalid, though she claims such a document exists. Her arguments are without merit based on the pleadings and exhibits available to the Court. Thus, with regards to this particular Debtor, the City has satisfied the public policy test.

### V. 11 U.S.C. § 362(b)(4)'s Interaction with the Seventh Circuit's *Thompson* Opinion

In *Thompson v. General Motors Acceptance Corporation*, the Seventh Circuit Court of Appeals held that, upon the request of a debtor, a creditor was required to return an asset to the bankruptcy estate, and if necessary, seek adequate protection afterwards. 566 F.3d 699, 707-08 (7th Cir. 2009).

The Seventh Circuit's holding in *Thompson* is not at odds with the application of 11 U.S.C. § 362(b)(4).

11 U.S.C. § 362(b)(4) is not a blanket exception to the automatic stay. As the First Circuit articulated in *McMullen*, a bankruptcy court must assess the totality of the circumstances before determining whether a governmental unit's purpose excepts certain of its actions from the automatic stay. 386 F.3d at 325. In the instant case, the City has made a prima facie showing under the pecuniary interest and public policy tests that its purpose in dealing with this Debtor is to protect the health and welfare of its citizens. Debtor has accumulated over 50 traffic citations, many of which are serious moving violations, including several speeding tickets and red-light violations, at least one of which was accrued post-petition. Under these circumstances, with regards to this particular debtor, the City has satisfactorily shown that its purpose is to ensure the safety and welfare of its citizens from a reckless driver. However, as to other drivers, such a

determination should be made on a case-by-case basis. This Court thus declines to extend its holding to say that the City's immobilization or repossession of *any* debtor's vehicle is always excepted from the automatic stay pursuant to an exercise of its police powers under 11 U.S.C. § 362(b)(4). Such a broad holding would run contrary to the Seventh Circuit's *Thompson* decision.

## CONCLUSION

For the foregoing reasons, Debtor's Motion to Show Cause will be denied by separate Order to be entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of February, 2018

FEB - 1 2018

17 B 03663
In re: Ashina Nefertari Hicks

# CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on ___FEB - 1 2018___, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

_____
Judicial Assistant/Deputy Clerk

## Electronic Service through CM/ECF System

Ashina Nefertari Hicks
10155 S State Street
Chicago, IL 60628
Debtor Pro Se

David Paul Holtkamp
City of Chicago Department of Law
121 N. LaSalle St.
Ste. 400
Chicago, IL 60602
Counsel for Debtor

David W Lipschutz
Arnold Scott Harris, P.C.
111 W. Jackson Blvd.
Suite 600
Chicago, IL 60604
Counsel for City of Chicago